(49 South. 586.)

No. 17,326.

CARSON v. SLATTERY.

(May 10, 1909.)

1. SEDUCTION (§ 17*)—EVIDENCE—NO PROMISE BROKEN.

The testimony does not sustain plaintiff's averment that defendant promised to marry her.

[Ed. Note.—For other cases, see Seduction, Dec. Dig. § 17.*]

2. IN PARI DELICTO—RIGHT OF ACTION.

Equal fault on both sides makes the parties equal in law.

3. SEDUCTION (§ 17*)—VOLENTI NON FIT INJURIA.

The plaintiff was not free from fault. From that point of view damages cannot be allowed.

[Ed. Note.—For other cases, see Seduction, Dec. Dig. § 17.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Lilly Carson against Edward L. Slattery. Judgment for defendant, and plaintiff appeals. Affirmed.

Paul Louis Fourchy, for appellant. William Stirling Parkerson and James Edwin Zunts, for appellee.

BREAUX, C. J. Plaintiff claims of defendant $50,000 damages, one-half in her own right and one-half toward the maintenance and benefit of her minor child, a little girl of about 7 years of age.

Seduction under promise of marriage by the defendant and the paternity of her child, which she lays at the door of defendant, are the grounds of the asserted damages. She urges that she and defendant lived together about 10 years before the suit was brought, and that during that time she gave birth to the child before mentioned, who is, she avers, the child of defendant.

Her contention is that she was innocent before she met the defendant, and that she was faithful to him afterward; that they lived together happily until the year 1906; that about that time he was having a house constructed for her, but that suddenly he abandoned her, sold the house, and left her with a child to support.

The defendant's position is, while not denying the intimacy charged, that not only he is not the father of the child, but the plaintiff is not the mother; that it is an attempt on her part to palm off the child on him, in order to obtain damages from him.

He alleges that plaintiff is not a person of the white race and denies all allegations about seducing the plaintiff.

Neither of the parties is married.

The date of their acquaintance began about the year 1898. The place was at a ball.

The time was about 12 o'clock at night.

Plaintiff stayed at the ball about an hour after midnight. She was in domino. She danced twice with the defendant, and spoke to him during the dance under her mask.

When asked as a witness on the stand how it was possible for defendant to know who she was, since she was a stranger to him, she answered that she wrote her name and informed him of her dwelling place. That was somewhere on North Rampart street.

That was the first step of the liaison which arose between them.

The plaintiff was at the time of the trial about 30 years of age.

She was a pupil years ago at Straight University. At this school she was known by the name of Lilly Yenewine.

After her school days she resided for some time in the town of Lafayette, La. She was the organist of the Trinity Colored Methodist Episcopal Church at that place.

For a time she was a resident, the record informs us, of St. Louis, Mo.

She left years ago, and wandered to different cities, Detroit, Dallas, Waco, and other places, returning to New Orleans, in which city she became a resident.

It was after her return, as before mentioned, that she attended the ball in question and became acquainted with defendant, with whom she lived on Rampart street and afterward on Carondelet street. At the last-named place she had a large house and had furnished rooms to let.

The plaintiff is unfortunate in the number of her family names. She seems always to have adhered to the Christian name Lilly, but her family name has not always been the same.

When she was at Straight University, she was known by the name before mentioned; afterward she became a Carson; and she seems to have been known at one time as a Carr.

The testimony does not disclose that these changes of names were the names of respective husbands, because it does not appear that she was ever married.

To go to the earliest days in the history of plaintiff:

On the 15th of July, 1871, before the recorder of births, Isabella Yenewine, born Stackhouse, a native of New Orleans, declared that on the 12th of August, 1865, at her residence, Lilly Yenewine, lawful issue of deponent with George Yenewine, a native of Kentucky, was born.

This declaration has every appearance of fixing the true name of the plaintiff.

Again, in the year 1899, a marriage certificate (produced in evidence) evidencing the marriage of one of her relatives recites that plaintiff was a witness. Her name was given as above; i. e., she signed in that name.

With these two facts staring her in the face when she testified as a witness, she persisted in asserting that her name was not as stated in the declaration and afterward as written by herself. She does not seem to have been disturbed at all by the names, and seemed pleased with the idea that there was not much in a name, however inconsistent it may appear. She evidently was unwilling to admit her identity.

It is evident that the plaintiff is the same person in regard to whom deponent deposed, as before mentioned, and the same person to whom we have referred from the first.

For a number of years after the birth of the child, the illicit relations continued without the least objection or protest on her part or anything in the nature of a request by her of defendant to comply with his asserted promise of marriage.

The testimony does not disclose that there was seduction at the beginning, and the fact that plaintiff continued to live with defendant without complaint is a link in the chain

of circumstances that she erred in alleging that she was seduced.

Seduction is defined as the act of persuading a woman to surrender her chastity.

Damaging testimony entirely precluded the conclusion that she was a chaste woman at the date that she met the defendant the first time.

Plaintiff and defendant are in pari delicto. She in consequence is without ground of complaint.

"Volenti non fit injuria" is an applying maxim, when the complainant is at fault.

Now, as to the child: Testimony on that point is inconclusive. We are not going into details in regard to a subject as delicate. The paternity of the child is veiled in mystery.

A witness testified that plaintiff told him that the child was born at a sanitarium in the city, of a white, wealthy father and mother; that soon after the birth they abandoned the child, and it fell to her to take charge of the little girl.

The other testimony is that the child was born at Covington.

There were witnesses who testified, who were well acquainted with plaintiff at the time, that they did not suspect that she was about to give birth to a child and did not for a moment think that she was to become a mother.

She did not disclose to the defendant that she was about to give birth to a child.

After the birth, she christened it in the name of another person as father, and not in the name of defendant.

There is no testimony of any acknowledgment on the part of defendant of the child as his.

Although he was quite friendly and kindly disposed to the child and the mother, to an extent, as relates to the child, which is hardly explainable, yet with the testimony in the record it is not possible with any certainty to fix the paternity upon the defendant.

There is contradiction from the first to the last on the part of plaintiff and her witnesses, besides certain immoral acts of hers, which render it impossible with any sort of certainty to determine that the child is the offspring of the defendant.

We will not dwell further upon the subject.

A mother, who comes into court to prove the paternity of her child, must tell a true, connected story, one that has some consistency about it and is not contradictory at every turn.

The woman who yields to love and affection and falls a victim to persuasion is entitled to protection and redress.

That is not the case here.

The question of race tendered is passed over. To say the least: She is white in appearance.

The plaintiff, owing to her weakness and indiscretions, is already unfortunate enough, without deciding that she is not of the white race.

Our learned Brother of the district court, who heard the witnesses and listened to the sad story, arrived at the conclusion that the plaintiff had no right of action.

We have found no error in the conclusion.

It therefore remains for us to affirm the judgment.

For reasons assigned, the judgment appealed from is affirmed.